**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-01614-CMA-MJW

ALFONSO AVENDANO, on behalf of himself and others similarly situated

      Plaintiff,

v.

AVERUS, INC. *et al.*

      Defendants.

---

**REPLY TO MOTION TO CERTIFY CLASS UNDER FAIR LABOR STANDARDS ACT
PURSUANT TO 29 U.S.C. § 216(b), EQUITABLY TOLL THE FLSA STATUTE OF
LIMITATIONS, AND APPROVE NOTICE**

---

COMES NOW the Plaintiff, with the following Reply:

## I. INTRODUCTION

In their Response, the Defendants misstate Plaintiff's burden for certification and then flood the Court with exhibits that are irrelevant to the certification issue. Here, all that matters is whether the Named Plaintiff's allegations and sworn statements demonstrate that the he is a member of a class of similarly situated employees that are all victims of a policy or policies that violate the FLSA. They do and he is.

## II. RELEVANT ALLEGATIONS AND SWORN STATEMENTS

1. The Named Plaintiff, Alfonso Avendano, worked for Averus, Inc. ("Averus") from December 2012 until mid-April 2013. Ex. A ¶ 1; Motion Ex. A ¶ 1.

2. During the entirety of his time working for Averus, Mr. Avendano's work was controlled by Defendant Michael Shank and his work consisted of him and his partner driving a van to and from customer locations and providing cleaning services on kitchen hoods and vents for each customer. Ex. A ¶¶ 2-3; Motion Ex. A ¶¶ 2-5, Complaint ¶¶ 1, 15, 25.

3. The Driver-Partner duos at each branch commonly referred to themselves as "Drivers"

1

and "Helpers". Motion n. 3 ("These [employee] Declarations use the terms "Driver" and "Helper," which is how employees commonly describe the Lead Service Technician and Service Technician positions, respectively.").

4. Averus' website claims a fleet of over 100 vehicles and 26 locations nationwide and Averus admits to 36 Drivers and 36 Helpers[1] operating at 6 branches. Motion, Ex. 1 to Ex. A at 43; Complaint ¶¶ 24-25; Response, Ex. 1 ¶¶ 5, 11.

5. The Drivers and Helpers at the other branches provide substantially the same services, drive substantially the same vehicles, and work substantially the same hours. Motion, Ex. 2 to Ex. B (advertisements for Averus Drivers and Helpers in Denver, CO, St. Paul, MN, Nashville, TN, and Milwaukee, WI); Response, Ex. 1 ¶¶ 11, 13.

6. The vans the Driver- Helper teams drove were specially equipped for the cleaning jobs, containing large diesel heaters and water pumps bolted into the cargo space behind the two front seats. At each customer location, hoses would be attached to the equipment and used to spray hot pressurized cleaning fluid. Ex. A ¶ 4; Motion, Ex. A ¶ 5; Complaint ¶¶ 1, 15, 25.

7. The Drivers and Helpers frequently worked more than 40 hours per week and were only paid for 40 hours of work. Ex. A ¶ 5; Complaint ¶¶ 2, 40, 50; Motion, Ex. A ¶¶ 4, 9. An apparent Averus audit of one of Mr. Avendano's time sheets, disclosed by Defendants, shows the shortage. Ex. 1 to Ex. A at 41 ("Travel Not Fully Accounted").

8. Defendant Shank told Mr. Avendano that Averus' policy was to only pay Drivers and Helpers for 40 hours of work per week regardless of how many hours were worked and Mr. Avendano also discussed this policy with other Driver-Helper pairs. Ex. A ¶¶ 6, 8.

9. The Drivers and Helpers did not keep track of their work time because they were never

---

[1] A declaration attached to Defendants' Response as Exhibit 1 admits to 36 Lead Service Technician, *i.e.*, Drivers. Because each Driver worked with a Helper, this also means there are at least 36 Helpers.

told to and it was not necessary given Averus' policy of only paying for 40 hours no matter how many hours were worked. Ex. A ¶ 7; Motion, Ex. A ¶¶ 4.

10.    Averus' branch managers, including Defendant Shank, created and maintained time sheets for their Drivers and Helpers and the Drivers and Helpers had to sign the time sheets in order to be paid. Ex. A ¶ 6; Ex. 1 to Ex. A; Response at 10-11; Response, Ex. 1 ¶ 15; Response Ex. 4 (¶ 11 of the branch manager declarations admit to branch managers maintaining the time sheets).

11.    Averus also had a policy that Drivers and Helpers who drove Averus-owned work vans were not paid for up to one hour of travel time from home to the first customer in the evening and for up to one hour from the last customer to home in the morning. Response Ex. 4 (¶ 6 of each of the branch manager declarations states the same policy).

12.    On most work days (except when out-of-town on work), Mr. Avendano left his home driving Averus' work van in the evening, picked up his Helper, and drove to the first customer. They then drove from customer to customer throughout the workday. Ex. A ¶ 9-10.

13.    It was both Averus' policy, and necessary to do the work, for the Driver-Helper teams to return to the branch each day from the last customer location prior to driving home. Ex. A ¶¶ 11-14, Motion Ex. A ¶ 9.

14.    At the branch, the Driver-Helper teams would return their completed work orders, pickup work orders for the next day, reload the vans with supplies, pickup spare parts for the equipment installed in the back of the van, and sometimes hold required meetings with the branch manager. Ex. A ¶¶ 10, 15; Motion Ex. A ¶ 9.

15.    Averus uses the paper work orders throughout their branches and these need to be picked up, filled out by hand at customer locations, and returned to the branches. Ex. A ¶ 13; Ex. 1 to Ex. A (containing work orders disclosed by Defendants after the Motion was filed); Response, Ex. 1 ¶ 17.

16.    After going to Averus' Denver branch in the morning (the end of the workday), Mr.

Avendano and his Helper would get back in the work van and Mr. Avendano would first drive his Helper home and then drive himself home. Ex. A ¶ 16.

### III. THE DEFENDANTS MISSTATE THE PLAINTIFF'S BURDEN

To succeed on this Motion, Mr. Avendano, through allegations and sworn statements, must make a prima facie showing that he is a similarly situated member of a class of employees that are commonly the victim of a policy that violates the FLSA. *Renfro v. Spartan Computer Servs.,* 243 F.R.D. 431, 433-44 (D. Kan. 2007). Defendants submit lengthy exhibits along with their Response in a seeming attempt to litigate the merits of the case on this Motion to Certify. This is not the time for that. *Miller v. Startek USA, Inc.,* No. 11-cv-00017, Slip Op. at 4 (Dist. Colo.  May 17, 2011) ("Given that lenient standard, and the fact that little discovery has yet occurred in this case, I find that it would be both legally erroneous and simply unfair to accept the invitation implicit in defendant's voluminous evidentiary submission to investigate further the potential efficacy of the allegations at this stage…."). Defendants' exhibits should be ignored and the focus should be on whether Mr. Avendano's allegations and sworn statements rise above the bar for certification. *Renfro,* 243 F.R.D. 431 at 433-44.

Further, the "happy camper" declarations, submitted as exhibits to the Response and purportedly signed by Averus employees who are putative class members, are particularly dubious and should be afforded no weight. *See* Response, Ex. 5; *Hose v. Henry Industries, Inc.,* No. 13-2490, Slip Op. (D. Kan. Sep. 24 2014)  ("The plaintiff does note, accurately, that courts generally afford little importance to the so-called "happy camper" affidavits of co-workers, offered by defendant") (citing *Chastain v. Cam,* No. 13-1802-SI, 2014 WL 3734368, *5 (D. Or. July 8, 2014).[2]

---

[2] *See, also, Drew v. Shoe Show, Inc.,* 2011 WL 4387096, at *5 n.3 (S.D. Ill. Sept. 19, 2011); *Morden v. T-Mobile USA, Inc.,* 2006 WL 2620320 (W.D. Wash. Sept. 12, 2006); *Creely v. HCR ManorCare, Inc.,* 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011).

The Defendants' should also not benefit from their current informational advantage. *Chavez v. Excel Services Southeast, Inc.,* 13-cv-03299, Slip Op. at n.5 (Dist. Colo. Sep. 18 2014). ("These arguments are of no matter at this stage of the litigation, when Plaintiffs do not have access to the employment records (currently in Defendants' possession) that would allow for such specificity in the pleading...."). When the Plaintiff filed this Motion, he knew little other than he and his coworkers were working more than 40 hours per week and not being paid for the hours in excess of 40. Defendants' subsequent disclosures and Response bring some focus, but little discovery has yet changed hands and the lenient certification burden meant to account for this information disparity should apply.

## I. THE CLASSES SHOULD BE CERTIFIED BASED ON THE ADMITTED HOME-TO-WORK TRAVEL POLICY

Defendants' Response admits to a policy of not paying for driving time at the beginning and end of the workday, which at least contributes to the Drivers and Helpers not being paid for all of the time they worked and should on its own be sufficient for certification. The admitted-to company-wide policy is to not compensate the Driver-Helper teams for up to one hour of travel at night (the beginning of the workday) from home to the first customer and for up to one hour in the morning from the last customer to home. Ex. 4 (¶ 6 of each of the branch manager declarations states the same policy). There is at least a question of fact as to whether this home-to work travel is in fact compensable and the classes should be certified on this policy. [3]

Defendants' home-to-work travel policy ignores the fact that driving a specially equipped

---

[3] Plaintiff understands that the court might want to apply the 3 year FLSA statute of limitations to the class definition. However, those dates will depend on the Court's ruling on equitable tolling addressed *infra*. Moreover, to the extent the current class definition captures more than employees of Averus that travel in Averus vehicles as part of their work, the Plaintiff does not object to limiting the class definition to traveling employees. Mr. Avendano will submit an amended proposed order to reflect that change.

work van with special heavy equipment bolted into it is at least arguably "integral and indispensable" work under 10th circuit law and is *always* compensable. *See* Ex. A ¶ 4; Motion, Ex. A ¶ 5; Complaint ¶¶ 1, 15, 25; *Crenshaw v. Quarles Drilling Corp.,* 798 F. 2d 1345, 1350 (10th Cir. 1986); *see, also, Smith v. Aztec,* 462 F. 3d 1274, 1285-90 (10th Cir. 2006).

    In Crenshaw, the 10th Circuit reiterated its previous holding that the "integral and indispensable" inquiry "must be decided upon [the] peculiar facts." *Crenshaw,* 798 F. 2d at 1350 (quoting *D A & S Oil Well Servicing, Inc. v. Mitchell*, 262 F.2d 552, 554-55 (10th Cir. 1958)). However, the court found that the particular set of facts before them – "a specially equipped truck containing many of the tools that he needed to service drilling rigs scattered across several states" -- led to a finding of "integral and indispensable": Id. at 1350

    In *Smith,* the 10th Circuit removed any doubt that the Portal to Portal act (29 U.S.C. § 254 – FLSA's provision permitting the exclusion of non-work travel time) did not change the previous meaning of work, and that the law of the 10th Circuit is that driving specialized equipment or tools without which the work cannot be done – even home-to-work driving – is *always* compensable work. *Smith,* 462 F. 3d 1274, 1286-87) ("While the Portal-to-Portal Act clearly excludes normal home to work travel from the scope of the FLSA, *see* 29 C.F.R. § 785.35, the Supreme Court has held that the "Act does not purport to change this Court's earlier descriptions of the term[ ] `work.'' *Alvarez*, 126 S.Ct. at 520. In *Steiner v. Mitchell*, [350 U.S. 247, 254 (1956)], the Supreme Court found that Congress passed the Portal-to-Portal Act still intending for an employee's activities to fall 'within the protection of the [FLSA] if they are an integral part of and are essential to the principal activities of the employees.')

    The vans here are at least arguably analogous to the trucks in *Crenshaw*. They contain the special equipment without which the cleaning cannot happen. Getting the equipment to the job site is an essential part of the job. Indeed, the workers call themselves "Drivers" and "Helpers". Response n. 3 ("These [employee] Declarations use the terms "Driver" and "Helper," which is how employees commonly describe the Lead Service Technician and

Service Technician positions, respectively."). Therefore, driving that specially equipped truck – even from home to the first customer of from the first customer home – is work and must be compensated. Ex. A ¶ 4; Motion, Ex. A ¶ 5; Complaint ¶¶ 1, 15, 25. [4]

Moreover, even if, *arguendo,* the "integral and indispensable" standard only captures the home-to-work and work-to-home travel of the Drivers, the Drivers *and* Helpers are also owed for the time spent from the last customer location to the Averus location each night. The Defendants' home-to-work policy directly conflicts with another Averus policy requiring Drivers and Helpers to stop at the Averus branch between the last customer and home. Travel time from a customer location to an employer location is always compensable under the FLSA. However, it illegally goes uncompensated under Defendants' policy. *See* 29 C.F.R. § 785.38; *McGuire v. Hillsborough County, FL,* 511 F. Supp. 2d 1211 (MD Florida 2007) ("This provision shows that travel from an employer-designated location to the workplace is compensable under the FLSA").

This unpaid last-customer-to-branch compensable driving occurs at all Averus branches. It is simply necessary to complete the Driver and Helper job duties. How else would the vans be resupplied or the work orders be dropped off and picked up? And in the application of this

---

[4] Though they do not do so explicitly, the Defendants may be trying to raise an affirmative defense under the Employee Commuting Flexibility Act of 1996 ("ECFA"), which amended the Portal-to-Portal Act by adding the final sentence to 29 U.S.C. § 254 (a). However, the ECFA is part of the portal-to-portal act and otherwise compensable time does not become non-compensable as a result of the ECFA: "under the ECFA otherwise non-compensable [traveling] is not compensable merely because the employee uses his employer's vehicle. Likewise, otherwise compensable travel time does not become non-compensable simply through the use of an employer-owned vehicle." *United Transp. Burton v. Hillsborough County, Fla.,* 181 Fed. Appx. 829, 835 (11th Cir.2006) (Citing *Union Local 1745 v. City of Albuquerque,* 178 F.3d 1109, 1117 (10th Cir. 1999)). Thus, the existence of the ECFA has no impact on whether travel time is compensable as integral and indispensable or otherwise. Moreover, nowhere in their answer or otherwise have the defendants raised the ECFA defense. *Burton,* 181 Fed.Appx. 829 ("The ECFA acts as an exclusion to FLSA coverage, and accordingly serves as a defense which employers can raise"); *See also La Grasta v.First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004) ("'plaintiffs [are] not required to negate an affirmative defense in their complaint.'"). Though futile, the Defendants may try to use the ECFA defense. But it has not been plead and should not be considered relevant to this Motion.

policy, Helpers and Drivers are indistinguishable. They both legally must be compensated for this time and currently are not under Averus' home-to-work policy.

## II. THE CLASSES SHOULD BE CERTIFIED BASED ON A POLICY OF NOT PAYING THE TEAMS FOR ALL HOURS WORKED IN EXCESS OF 40 IN A WEEK

Mr. Avendano alleges and declares that he and other Drivers and Helpers were subjected to a policy of paying only 40 hours of work regardless of the amount of time they worked. The Defendants attempt to hide this policy in their Response by cherry-picking which of Mr. Avendano's time sheets they attach as exhibits. They provide 4 time sheets, two of which reflect *exactly* 40 hours. *See* Response, Exs. A-D to Ex. 1. However, after the Motion was filed, Defendants provided all of Mr. Avendano's time sheets through disclosures. 14 out of 17 time sheets reflect *exactly* 40 hours. *See* Ex. 1 to Ex. A.

Mr. Avendano requested time sheets for all of the other Drivers and Helpers employed by Defendants and Defendants to date have refused to provide them. *See* Ex. B. Instead, with their Response, defendants provide a sampling of time sheets from other branches. Given the misleading picture painted by Defendants sampling of Mr. Avendano's time sheets, no weight should be given to the samplings provided of other employees' time sheets, and Defendants should not be permitted to benefit from refusing to participate in discovery.

Instead, the Court should consider the only complete set of time sheets available for review (Mr. Avendano's); the ridiculousness of claiming that in 14 of 17 weeks Mr. Avendano worked exactly 40 hours; the fact that Mr. Avendano alleges and swears that he and those similarly situated regularly worked more than 40 hours in a week; that almost every branch (if not every branch) had workers doing substantially the same work, in substantially the same way, and working substantially the same hours; and that the branch managers, *not* the Drivers and Helpers, maintained the time records at every branch.

The Defendants address the bizarre practice of branch managers maintaining time sheets for their offsite employees in their Response by casually claiming the branch managers

maintained travel time completely, yet obliquely, by combining it into an "other time" category or simply the time at the jobsite. But, they assert in effect, "trust us", it happened. Response 10-11. The time sheets, and the manner they were kept, reflect a complete failure to meet FLSA's record-keeping requirements. *See* 29 C.F.R. § 516 *et seq.* Despite Averus' casual assertions, it is frankly impossible for a branch manager sitting in a branch office to unilaterally maintain accurate time records for employees who are largely in the field and come to the branch once a day. Yes the work orders had in-and-out times for the work at customer locations, but nowhere could the employees track their driving time and the branch managers' accounting of that time, to the extent it happened, was apparently a guess. It is not clear the managers even worked the night shift. Accurate time could have been kept by employees maintaining time in the field as they actually worked. But Averus chose not to do that, failed to accurately account for all of the time its employees worked, and cannot now rely on post hoc rationalizations of its sloppy records to save itself. Both the class and the sub-class should be certified on this policy as well. [5]

### III. TOLLING SHOULD BE PERMITTED

Mr. Avendano argues for equitable tolling from the date of the Motion in order to prevent prejudice to the putative class do to the delay in certification. The Defendants object. Recently, the Court in *Abrams v. City of Albuquerque*, Civ. No. 10-0872, Slip op., (D. New Mex. June 26, 2014) exhaustively catalogued the cases surrounding the question of whether the FLSA statute of limitations should be tolled pending a decision on a motion to certify. The

---

[5] To the extent there's traction to Defendants' argument that even if there was a pay-exactly-40-hours policy violative of the FLSA in Defendant Shank's branch, Mr. Avendano could not know it was true at all branches, the sub-class – encompassing only employees managed by Shank – should still be certified. Still, given the Defendants refusal to provide discovery on workers in other branches and the uniformity of Defendants' policies, as best exemplified by the near-identical declarations of Averus' branch managers attached to their Response (Response Ex. 4), both classes should be certified under the first stage lenient standard.

*Abrams* court cites *Stransky v. HealthONE of Denver, Inc.,* 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012) as an example of courts granting tolling as a matter of course in these situations to protect putative class members from the inherent delay in deciding the Motion.. This approach should apply here.[6] [7]

## IV.   CONCLUSION

For the foregoing reasons, the Motion should be granted.

Dated: 10/20/14                                  Respectfully submitted,

                                                 s/Alexander Hood_____
                                                 Towards Justice
                                                 601 16th St., Suite C #207
                                                 Golden, CO 80401
                                                 Tel.: 720-239-2606
                                                 Fax: 303-957-2289
                                                 Email: alex@towardsjustice.org
                                                 Attorney for the Plaintiffs

[6] Unlike most tolling situations with a Motion to Certify, here the there is more than the mere delay. Mr. Avendano swore that a 29 C.F.R. § 516.4 notice informing him of his FLSA rights was not posted at his worksite. Motion, Ex. A ¶ 14. There is no evidence to the contrary. The failure to post a notice can warrant barring the statute of limitations defense entirely. *See Kev. Saigon Grill,* 595 F.Supp.2d 240, 259 (S.D.N.Y. Oct. 21, 2008) ("In sum, we conclude that the statute-of-limitations defense is inapplicable here in view of the defendants' concealment of plaintiffs' rights from them.").
[7] As an alternative, the *Abrams* court also points to some courts that certify with class definitions that account for tolling, but wait to make a final decision on tolling until a later date. *See, e.g., Whitehorn v. Wolfgang's Steakhouse, Inc.,* 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011). As the *Abrams* Court noted, "[t]hese courts cast a wide net to avoid excluding putative class members whose claims seemingly fall outside of the statute of limitations but who might have viable claims under the doctrine of equitable tolling." *Abrams,* No. 10-0872.

**Certificate of Service**

I hereby certify that on 10/20/2014, I served a true and correct copy of the forgoing on the individuals below pursuant to F.R.C.P. 5.

*Attorneys for Defendants*

Antonio Caldarone
Amy L. Miletich
Brendan Benson


  s/ Alexander Hood
  Alexander Hood