## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-01614-CMA-MJW

ALFONSO AVENDANO, on behalf of himself and others similarly situated

   Plaintiffs, v.

AVERUS, INC.;
MICHAEL SHANK

   Defendants.

---

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

---

COMES NOW the Plaintiff and those similarly situated, by and through the undersigned counsel, with the following Complaint:

## I. STATEMENT OF THE CASE

1. Plaintiff, Alfonso Avendano, and those similarly situated are currently or were formerly employed by the Defendants. Throughout their employment, the Plaintiff and those similarly situated traveled long distances, often to neighboring states, driving vehicles owned by Averus containing special cleaning equipment. The Plaintiff and those similarly situated used this equipment to, among other things, clean the kitchen exhausts of Averus' clients.

2. The Plaintiff and those similarly situated often worked more than 40 hours in a workweek and Defendants failed to pay the Plaintiff and those similarly situated for all of the hours they worked and for overtime wages for hours worked in excess of 40 in a workweek.

3. By their actions, Defendants breached their employment contracts with the Plaintiff and those similarly situated and violated the Fair Labor Standards Act (the "FLSA") 29 U.S.C. §§ 201 *et seq.*

1

## II. PARTIES, JURISDICTION, AND VENUE

4.  Plaintiff incorporates by reference all previous allegations of this Complaint as if fully re-written herein.

5.  Plaintiff Alfonso Avendano is a natural person who was domiciled in Colorado at all times relevant to this Complaint.

6.  Defendant Averus Service Inc. (hereinafter "Averus") is a Wisconsin corporation which at all times relevant to this Complaint was doing business in Colorado.

7.  Defendant Shank is a natural person who, at all times relevant to this Complaint and on information and belief, was domiciled in Colorado and was an agent of Averus.

8.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related state law claims.

9.  Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants are located in Colorado.

## III. FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

10. Plaintiff incorporates by reference all previous allegations of this Complaint as if fully re-written herein.

11. Plaintiff and those similarly situated entered into employment contracts with Defendant Averus to work as hourly employees.

12. Plaintiff and those similarly situated were employees of Averus because, among other things, Averus treated them as such by, among other things, withholding employment and other taxes from their paychecks and by controlling when, where, and how much labor each performed and furnishing tools, materials, and equipment.

13. During the entire period of Plaintiff's employment, Defendant Shank was a manager and agent of Averus and exercised operational control over Plaintiff and other similarly situated employees at Averus' Colorado location.

14. Under the employment contract, Plaintiff and those similarly situated were hourly employees who drove to and from Averus' clients for the purpose of cleaning kitchen exhaust hoods at each client location.

15. The Plaintiff worked for Averus from approximately December 2012 until approximately mid-April 2013.

16. During the entirety of his time working for Averus, the Plaintiff's work consisted of him and his partner driving a van to and from customer locations and providing cleaning services on kitchen hoods and vents for each customer.

17. The Driver-Partner duos at each branch commonly referred to themselves as "Drivers" and "Helpers".

18. Averus' website claims a fleet of over 100 vehicles and 26 locations nationwide and Averus admits to 36 Drivers and 36 Helpers operating at 6 branches.

19. The Drivers and Helpers at the other branches provide substantially the same services, drive substantially the same vehicles, and work substantially the same hours.

20. The vans the Driver- Helper teams drove were specially equipped for the cleaning jobs, containing large diesel heaters and water pumps bolted into the cargo space behind the two front seats. At each customer location, hoses would be attached to the equipment and used to spray hot pressurized cleaning fluid.

21. The Drivers and Helpers frequently worked more than 40 hours per week and were only paid for 40 hours of work.

3

22. Defendant Shank told Mr. Avendano that Averus' policy was to only pay Drivers and Helpers for 40 hours of work per week regardless of how many hours were worked and Mr. Avendano also discussed this policy with other Driver-Helper pairs.

23. The Drivers and Helpers did not keep track of their work time because they were never told to and it was not necessary given Averus' policy of only paying for 40 hours no matter how many hours were worked.

24. Averus' branch managers, including Defendant Shank, created and maintained time sheets for their Drivers and Helpers and the Drivers and Helpers had to sign the time sheets in order to be paid.

25. Averus also had a policy that Drivers and Helpers who drove Averus-owned work vehicles were not paid for up to one hour of travel time from home to the first customer in the evening and for up to one hour from the last customer to home in the morning.

26. On most work days (except when out-of-town on work), Mr. Avendano left his home driving Averus' work van in the evening, picked up his Helper, and drove to the first customer. They then drove from customer to customer throughout the workday (with the workday being the night, as the Plaintiff and those similarly situated worked night shifts).

27. It was both Averus' policy, and necessary to do the work, for the Driver-Helper teams to return to the branch each day from the last customer location prior to driving home.

28. At the branch, the Driver-Helper teams would return their completed work orders, pickup work orders for the next day, reload the vans with supplies, pickup spare parts for the equipment installed in the back of the van, and sometimes hold required meetings with the branch manager.

29. Averus uses the paper work orders throughout their branches and these need to be picked up, filled out by hand at customer locations, and returned to the branches.

30. After going to Averus' Denver branch in the morning (the end of the workday), Mr. Avendano and his Helper would get back in the work van and Mr. Avendano would first drive his Helper home and then drive himself home.

31. Plaintiff and those similarly situated frequently worked more than 40 hours a week, but were not paid for all of the hours they worked and were not paid overtime for hours worked in excess of 40 in a week.

32. Averus did not keep records of the hours actually worked by Plaintiff and those similarly situated.

33. At all relevant times, Defendant Averus has annual gross revenue of $500,000 or more.

## IV. RULE 23 CLASS ALLEGATIONS

34. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

35. Plaintiff Avendano asserts his Count I claims as a Fed R.Civ P. 23 class action on his own behalf and on behalf of a class for which Plaintiff seeks certification.

36. Pending any modifications necessitated by discovery, the Plaintiff preliminarily defines this "Rule 23 Class" as follows:

> ALL CURRENT AND FORMER HOURLY EMPLOYEES OF DEFENDANT AVERUS WHO DROVE COMPANY VEHICLES BETWEEN AVERUS CLIENTS AS PART OF THEIR WORK AND WHO WERE NOT COMPENSATED FOR ALL OF THE HOURS THEY WORKED AND/OR OVERTIME FOR HOURS WORKED IN EXCESS OF 40 IN A WEEK

37. Upon information and belief, Defendant Averus did not pay the putative class members for all of the hours they worked or overtime for hours worked in excess of 40 in a week. Instead, Defendant Averus only paid the class members for some of the hours they worked and either did not pay them at all for hours worked in excess of 40 in a week, or only paid them their regular hourly rate, rather than time and a half, for hours worked in excess of 40 in a week.

38. The class is so numerous that joinder of all potential class members is impracticable.

39. Plaintiff does not know the exact size of the Class since that information is within the control of Defendants.

40. The named Plaintiff estimates that there were at least 8 similarly situated employees that worked with the named Plaintiff out of Averus' Colorado office.  Averus' website claims it has 26 locations throughout the country.

41. Plaintiff was part of a two-man team that drove a company-provided vehicle containing special materials and equipment to customer locations to, among other things, clean kitchen exhausts. Averus' website boasts, "[o] ur modern fleet of over 100 vehicles is stationed nationwide to provide excellent service to your business."

42. The named Plaintiff therefore estimates that the class is made up of between 200 and 300 current and former employees of Averus. The exact size of the class will be easily ascertainable from Averus' employment records.

43. There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include: how Averus compensated its employees for hours worked in excess of 40 hours in a week; whether Averus compensated its employees for all of the hours they worked; and whether Averus paid its employees at least minimum wage and overtime.

44. The class claims asserted by the Plaintiff are typical of the claims of all of the potential Class Members. This is an uncomplicated case of unpaid wages and the class claims are typical of those pursued by victims of these violations. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy.

45. The named Plaintiff will fairly and adequately protect and represent the interests of the class. He was an employee of Averus and was a victim of the same violations of law as the other class members, *i.e.,* the failure to compensate employees for all hours worked and the failure to compensate employees for overtime.

46. The named Plaintiff is represented by counsel experienced in wage and hour litigation and class actions.

47. The prosecution of separate actions by the individual potential Class Members would create a risk of inconsistent or varying adjudications with respect to individual potential Class Members that would establish incompatible standards of conduct for Defendants.

48. Each Class Member's claim is relatively small. Thus, the interest of potential Class Members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger Class.

49. The Plaintiff is unaware of any members of the putative class who are interested in presenting their claims in a separate action.

50. The Plaintiff is unaware of any pending litigation commenced by members of the Class concerning the instant controversy.

51. It is desirable to concentrate this litigation in this forum because the Defendants do business in this jurisdiction and at least 8 members of the potential class reside, or did reside, in this jurisdiction.

52. This class action will not be difficult to manage due to the uniformity of claims among the Class Members and the susceptibility of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

53. The contours of the class will be easily defined by reference to the payroll documents Defendants were legally required to create and maintain. 29 C.F.R. § 516.2.  Notice will be easily distributed as all members of the putative class are or were recently employed by Defendants and Defendants were required to create and maintain records containing the mailing addresses of each such class member.

### V. 29 U.S.C. § 216(B) COLLECTIVE ACTION ALLEGATIONS

54. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

55. Plaintiff brings his FLSA claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of himself and on behalf of all other similarly situated current and former employees of the Defendants.

56. Pending any modifications necessitated by discovery, the named Plaintiff preliminarily defines the "216(b) Class" as follows:

> ALL CURRENT AND FORMER HOURLY NON- EXEMPT
> EMPLOYEES OF THE DEFENDANTS WHO WERE NOT
> COMPENSATED FOR ALL HOURS WORKED AND/OR
> WERE NOT PAID OVERTIME FOR HOURS WORKED IN

EXCESS OF 40 IN A WEEK

57. Pending any modifications necessitated by discovery, the named Plaintiff preliminarily

defines the "216(b) Sub-Class" as follows:

> ALL CURRENT AND FORMER HOURLY NON- EXEMPT
> EMPLOYEES OF THE DEFENDANTS WHO WERE NOT
> COMPENSATED FOR ALL HOURS WORKED AND/OR
> WERE NOT PAID OVERTIME FOR HOURS WORKED IN
> EXCESS OF 40 IN A WEEK AT DEFENDANT AVERUS'
> COLORADO LOCATION

58. All potential FLSA Class Members are similarly situated because, among other things, they

were all hourly employees of Defendants and, upon information and belief, all suffered from

the same policies of Defendants, including: (1) failing to pay overtime premiums; (2) failing

to compensate employees for time spent driving to and from customer locations; (3) failing

to compensate employees for all of the time they worked; and (4) failing to pay class

members at least statutory minimum wage on each pay day as mandated by the FLSA.

## VI. COUNT I: FED. R. CIV P. 23 CLASS CLAIM FOR BREACH OF CONTRACT OR QUASI-CONTRACT AND STATUTORY WAGE VIOLATIONS IN SEVERAL STATES
### (Against Defendant Averus)

59. Plaintiff incorporates by reference all previous allegations of this Complaint as if fully re-

written herein.

60. As set forth above, Plaintiff asserts this count on his own behalf and on behalf of all other

similarly situated employees. Fed. R. Civ P. 23.

61. Averus entered into employment contracts with Plaintiff and those similarly situated.

62. Under the employment contracts, Plaintiff and those similarly situated were employees of

Averus because, among other things, Averus treated them as such by, among other things,

withholding employment and other taxes from their paychecks and by controlling when,

where, and how much labor each performed and furnishing tools, material, and equipment.

63. Under the employment contracts, the Plaintiff and those similarly situated were hourly

employees and were to be paid a set dollar amount for each hour worked.

64. An implied term in the employment contracts requires Defendant Averus to pay minimum

wage pursuant to 29 U.S.C. § 206 and overtime pursuant to 29 U.S.C. § 207.

65. State statutory and regulatory labor requirements were also implied into the contracts.

66. At all relevant times, Defendant Averus had a company-wide policy to not compensate the

Plaintiff and those similarly situated for up to one hour of travel at night (the beginning of

the workday) from home to the first customer and for up to one hour in the morning from

the last customer to home.

67. At least some mornings after leaving the final customer, the Plaintiff and those similarly

situated would drive to Averus branches prior to driving home.

68. At the Averus branches, the Plaintiff and those similarly situated would complete job duties

like resupplying their company vehicle, picking up spare parts to repair the equipment in

their company vehicle, completing paperwork, and attending meetings.

69. 49. Defendant Averus breached the employment contracts by failing to pay the Plaintiff and

all others similarly situated for every hour that they worked.

70. Defendant Averus breached the employment contracts by failing to pay the Plaintiff and all

others similarly situated overtime at the rate of one and one-half times the regular rate of

pay for each hour worked in excess of 40 in a week.

71. The travel time from the last customer to the branch is *always* compensable under federal and state laws. This time went uncompensated under Averus' illegal pay policies and must be compensated.

72. Driving a specialized work vehicle containing heavy equipment and tools necessary to do work at customer locations is always compensable – whether driving to or from home or otherwise – under federal and state laws. This time went uncompensated under Averus' illegal pay policies and must be compensated.

73. The breach caused Plaintiff and all others similarly situated to suffer damages, including unpaid wages. Defendant is additionally liable for various statutory damages, attorney's fees, and costs for unpaid wages under the statutes of the applicable states.

74. In the alternative, if the contracts fail, Defendant Averus is liable to the Plaintiff and to all others similarly situated in unjust enrichment or *quantum meruit* for their unpaid wages because equity requires that Defendant Averus disgorge the benefits of the uncompensated labor of Plaintiff and those similarly situated, and that Plaintiff and those similarly situated be compensated for the reasonable value of the services that each provided.

## VII. COUNT II: FAILURE TO PAY MINIMUM WAGE AND OVERTIME PREMIUMS IN VIOLATION OF FLSA (*29 U.S.C. § 201 ET SEQ.*)
### (Against All Defendants)

75. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

76. By information and belief, at all relevant times, the Defendants were an enterprise as defined by 29 U.S.C. § 203(s)(1) because they had annual revenues in excess of $500,000 and were engaged in interstate commerce in that, among other reasons, at all relevant times Defendant

Averus had multiple employees handling goods that moved in interstate commerce, including work vehicles and specialty cleaning materials.

77. By information and belief, at all relevant times, the Plaintiff and those similarly situated were engaged in commerce as that term is defined by 29 U.S.C. § 203(b).

78. As set forth above, Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated employees pursuant to 29 U.S.C. § 216(b).

79. Plaintiff and all others similarly situated were "employees" as that term is defined by FLSA 29 U.S.C § 203 (e) because each entered into an employment contract with Defendant Averus.

80. Defendants "employed" the Plaintiff and all others similarly situated as that term is defined by FLSA 29 U.S.C. § 203 (g) because each was suffered or permitted to work by the Defendants.

81. Defendant Shank employed the Plaintiff and the similarly situated members of the 216(b) Sub-Class pursuant to FLSA 29 U.S.C. § 203(d) because he acted directly or indirectly in the interest of Averus in relation to the Plaintiff and the members of the 216(b) Sub-Class by, among other things, controlling when, where, and how they worked; maintaining their employment records; setting the terms of their employment; and having the power to hire and fire them.

82. Defendants violated FLSA when they failed to pay Plaintiff and all others similarly situated for hours worked beyond forty (40) in each given workweek. 29 U.S.C. §207.

83. Defendants violated FLSA when they failed to pay Plaintiff and all others similarly situated at least minimum wage for some of the hours they worked. 29 U.S.C. §207.

12

84. Defendants' violations of FLSA were willful under 29 U.S.C. 255 (a) because they knew or should have know that Plaintiff and all others similarly situated were entitled overtime and minimum wage under the FLSA, and/or, upon information and belief, they failed to make adequate inquiry regarding whether the Plaintiff and others similarly situated were covered by the FLSA.

85. Plaintiff and all others similarly situated have suffered lost wages and lost use of those wages in an amount to be determined at trial.

86. Plaintiff and all others similarly situated are entitled to recover unpaid overtime premiums, unpaid minimum wages, liquidated damages, attorneys' fees. costs, and post-judgment interest. 29 U.S.C. §§ 206, 207, 216(b).

## VIII. **DEMAND FOR JURY TRIAL**

87. Plaintiffs demand a trial by jury for all issues so triable.

## IX. **PRAYER FOR RELIEF**

88. Plaintiff respectfully requests an Order from this Court that:

a. This action be certified as a class action pursuant to Fed.R. Civ. P. 23;

b. Plaintiff be appointed as class representative of the Rule 23 Class as defined above;

c. Undersigned counsel be appointed Class Counsel for the Rule 23 Class;

d. Prompt notice of this litigation be sent to all potential Rule 23 Class Members; e. Plaintiff and the Rule 23 Class Members be awarded their unpaid wages, statutory damages, pre- and post-judgment interest, costs, and attorney's fees when available under applicable state laws.

f. This case also be certified to proceed as a collective action under 29 U.S.C §

216(b), and that appropriate notice of this suit and the opportunity to opt into it be provided to all potential members of the 216(b) Class and Sub-Class;

g. Plaintiff and the 216 (b) Class and Sub-Class be awarded unpaid minimum wages and unpaid overtime premiums;

i. Plaintiff and the 216 (b) Class and Sub-Class be awarded liquidated damages pursuant to 29 U.S.C. §216(b);

j. Plaintiff and the 216 (b) Class and Sub-Class be awarded post-judgment interest as permitted by law;

k. Plaintiff and the 216 (b) Class and Sub-Class be awarded costs and attorney fees pursuant to 29 U.S.C. §216(b);

l. Plaintiff, the 216 (b) Class and Sub-Class, and the Rule 23 class members be awarded such other and further relief as may be deemed necessary and appropriate by the Court.

Dated: 12/4/2014

Respectfully Submitted,

s/Alexander Hood
Alexander Hood
Towards Justice
601 16th St., Suite C #207
Golden, CO 80401
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org

Attorneys for the Plaintiffs

14