**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-01614-CMA-MJW

ALFONSO AVENDANO, on behalf of himself and others similarly situated,

     Plaintiff,

v.

AVERUS, INC., and
MICHAEL SHANK,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION UNDER RULE 23(b)(3)**

---

This matter is before the Court on Plaintiff's Motion for Class Certification Under Rule 23(b)(3) of the Federal Rules of Civil Procedure and Appointment of Class Counsel Under Rule 23(g).  (Doc. # 69.)

## I.  <u>BACKGROUND</u>

Defendant Averus Inc. (Averus) provides maintenance and fire protection services to restaurants, bars, and hotels in several states, including kitchen exhaust and oven cleaning services.  (Doc. # 34-1 at ¶ 5.)  Averus' corporate office is located in Gurnee, Illinois, and the company has seven branch offices in six states (Gurnee, Illinois; Denver, Colorado; Indianapolis, Indiana; St. Paul, Minnesota; Kansas City, Missouri; St. Louis, Missouri; and Nashville, Tennessee).  (*Id.*)  It also employs drivers

who operate out of Milwaukee, Wisconsin, but that location does not have a branch office or other type of "home base" for employees.  (Doc. # 69-1 at 38:17-25, 39:1-11.)

Plaintiff, Alfonso Avendano, was a non-exempt employee and worked as a "Lead Service Technician" ("Driver") for the Denver branch of Averus.  Plaintiff was paid $10.00 an hour.  (Doc. # 41-1 at ¶ 5.)  Throughout his tenure with Averus, Plaintiff drove with a "Service Technician" ("Helper") in his employer-issued van.  (Doc. # 41-1 at 3.) The van was equipped with professional cleaning equipment and cleaning supplies – specifically, a large diesel water heater and water pump were bolted into the back of the van, immediately behind the front seats.  (Doc. # 34-1 at ¶ 4.)  The two-person Driver and Helper team would arrive at an Averus client's location and attach hoses to this equipment in the van, using the hoses to spray heated, pressurized cleaning fluid onto oven hood and vent exhaust systems at restaurants and other job sites.  (*Id.*)  Plaintiff Avendano was directly supervised by Michael Shank, then-Branch Manager of Averus' Denver location.  (*Id.*)  Because Averus' customers were restaurants and other customer facilities, the Drivers and Helpers generally did their cleaning work throughout the night, when those restaurants and other customer facilities were closed to the public.  (Doc. # 71-1 at 17:14-18.)  (Doc. # 34-1 at ¶ 5.)  He was directly supervised by Michael Shank, then-Branch Manager of Averus' Denver location.  (*Id.*)  Averus currently employs eight full-time Drivers and Helpers at its Denver branch, and 64 Drivers and Helpers at its other branches.  (*Id.* at ¶ 11.)  Additionally, there are over 50 current and former Drivers and Helpers who can assert claims within the FLSA statute of limitations based out of Averus' Denver Branch alone.  (Doc. # 69 at 9.)

On March 31, 2015, the Court granted in part and denied in part Plaintiff's Motion to certify a collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b).  (Doc. # 51.)  The Court concluded that Plaintiff had proffered "substantial allegations" that Drivers and Helpers who worked in Averus' Denver location and who were supervised by Michael Shank had been exposed to common, company-wide policies with respect to the failure to pay minimum wages and overtime.  (*Id.* at 15.) Accordingly, it permitted an "opt-in" notice to be mailed to those Drivers and Helpers who worked at Denver's Averus location.  (Doc. # 66.)  Six Denver employees have opted in to this Denver class.  (Doc. ## 79, 82, 83.)

After Plaintiff deposed Averus' 30(b)(6) designee Michael Shank, who was promoted to Regional Manager of Averus in 2014, Plaintiff again moved for certification as to a national FLSA class.  (Doc. # 69.)  On September 29, 2016, in its second certification Order, the Court certified a national class of Drivers and Helpers for opt-in notice under Section 216(b) of the Fair Labor Standards Act (FLSA), after finding that Plaintiffs had made "substantial allegations" that Averus utilized two unlawful compensation policies on the national level.  (Doc. # 91 at 20-21, 30-31.)  First, with respect to "wait times" – i.e., the time that employees spent waiting at a customer site before beginning their cleaning work – the Court found that

> Mr. Shank testified that once employees arrive at the customer site, if they are required to wait before beginning their cleaning job, Averus' national policies provide that (1) they are not compensated for this waiting time (beyond a 30 minute break), and (2) they are not permitted to use Averus-issued vans for personal uses, drive them anywhere else until the job is completed, or drive the vans home during breaks.  Although Mr. Shank testified that wait time is considered "employee free time," and that employees "could" shop, eat, read, or sleep during breaks, the Court finds

that Plaintiff has met its burden to show "substantial allegations" that Averus had a common, national policy that restricted putative class members in a **meaningful way** from using waiting time effectively for their own purposes.  Indeed, at the very least, the van policy alone would restrict employees from doing anything outside of walking distance of the van.

(*Id.* at 20.)

The Court came to the same conclusion with respect to Averus' national policy as to the compensability of home-to-work commuting time (with the stipulated exception of the Gurnee location), finding that Plaintiffs submitted "substantial allegations" that:

(1) Drivers and Helpers were not compensated for the time they spent commuting from home to their first customer, nor were they compensated for the time they spent traveling from their last customer back home, unless (and only to the extent that) this time exceeded one hour; and (2) that the vans employees drove contained heavy, professional equipment, and that this equipment was "indispensable and integral" to the employees' principal activity of cleaning commercial and restaurant ovens.

(*Id.* at 30-31.)  Accordingly, the Court certified a "national," opt-in class under the FLSA.  (*Id.* at 32.)

The instant Motion seeks to certify a "national" class of current and former Drivers and Helpers asserting claims under six state wage laws[1] (Colorado, Indiana, Missouri, Minnesota, Illinois, and Wisconsin),[2] pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure (Rule 23(b)(3)).  (Doc. # 69 at 7–8.)  As the basis for such

---

[1] In addition to claims of violations of state wage-and-hour laws, Plaintiff's First Amended Complaint also brings other claims, including breach of contract, quasi contract, and unjust enrichment.  (Doc. # 1.)  Nevertheless, Plaintiff noted that "The proposed classes and allegations of illegal policies set out in Plaintiff's Motion to Certify are narrower and more refined than those set out in Plaintiff's complaint."  (Doc. # 80 at 2.)

[2] Although Averus has a branch in Tennessee, Tennessee law does not provide a cause of action for minimum wage of overtime violations, so Plaintiffs did not include this state in their proposed class.  (*See* Doc. # 80 at 7.)

certification, Plaintiff points to the two company-wide policies identified above, as well as to what he argues was a national policy at Averus regarding the failure to pay overtime.  (*Id.*)  In connection with their Motion, Plaintiff also requests that Towards Justice, the nonprofit organization litigating this case, be appointed as class counsel. (*Id.*)

## II.  ANALYSIS

### A.  Hybrid Suits: The Interaction Between Section 216(b) and Rule 23

The filing of so-called "hybrid" wage-and-hour lawsuits – involving a "collective" action brought under Section 216(b) of the Fair Labor Standards Act (FLSA), alleging violations of that Act, and a Rule 23 class action, asserting violations of state wage-and-hour laws, is a relatively recent phenomenon.  *See* Thomas A. Linthorst & Richard G. Rosenblatt, Wage and Hour Class Actions: Courts Grapple With Conflict Between Rule 23 and FLSA's Opt-in Requirement, 188 N.J. L.J. 118 (April 9, 2007).

In a "collective" action certified under Section 216(b) of the FLSA, prospective class members must affirmatively consent to join the class by "opting in"; however, employees who do not opt-in are not bound by the results of the litigation, including any settlement.  29 U.S.C. 216(b) ("[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.")  Additionally, certification is warranted under Section 216(b) so long as the plaintiff makes "substantial allegations" that employees were "similarly situated" insofar as they were "together the victims of a single decision, policy, or plan."  *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095,

1102 (10th Cir. 2001).  In contrast, a class action certified under Rule 23(b)(3) must meet a variety of rather more stringent procedural prerequisites listed in the Rule itself. Additionally, if a class is certified under the Rule, any individual who falls within the class definition and who does not wish to be bound by the judgment (or settlement) must timely exclude him or herself by affirmatively opting out of the class.  *See* Fed. R. Civ. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances . . . that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded"); *In re: Veneman*, 309 F.3D 789, 792 (D.C. Cir. 2002) ("certification pursuant to Rule 23(b)(3), however, comes with certain procedural requirements: Because members of a class seeking substantial monetary damages may have divergent interests, due process requires that putative class members receive notice and an opportunity to opt out.").

There are undoubtedly some procedural difficulties that result in simultaneous opt-in and opt-out collective/class actions.  First, the Court and the parties must be very careful in crafting a class notice that effectively explains the differences and legal effects of deciding to opt in to the FLSA action, or opt out of the Rule 23 action.  Second, opt-in rates also tend to be significantly lower than opt-out rates, which can have two outcomes: (1) differing FLSA and Rule 23 class sizes, and (2) the possibility that employees who do not opt-in to the FLSA collective action may still be bound by the judgment on the Rule 23(b) class action.  *See* Rachel K. Alexander, *Federal Tails and State Puppy Dogs: Preempting Parallel State Wage Claims to Preserve the Integrity of*

*Federal Group Wage Actions*, 58 Am. U. L. Rev. 515, 518 (Feb. 2009) ("Historically, the FLSA's opt-in mechanism has limited the size of the FLSA action, with estimates indicating that typically only between fifteen and thirty percent of potential plaintiff-employees opt-in"); Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 285 (2008) (discussing the case management issues involved in hybrid class actions).

As a result, federal courts across the country have reached vastly differing conclusions as to whether a class action brought under Rule 23, alleging violations of state law wage claims and brought under the Court's supplemental jurisdiction, may proceed in the same action as an FLSA collective wage claim.  Some courts have reasoned that the contrast between the opt-in and opt-out procedures bars them from hearing such "hybrid" cases, on the basis of federal preemption or case manageability concerns; others have found that Rule 23 prerequisites, such as commonality, were defeated by the fact that differences in state wage laws "predominated" over common questions.  *See, e.g.*, *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 452 (W.D. Pa. 2007); *Williams v. Trendwest Resorts, Inc.*, No. 2:05–CV–0605, 2007 WL 2429149, at *3–4 (D. Nev. Aug. 20, 2007); *Otto v. Pocono Health Sys.*, 457 F.Supp.2d 522, 524 (M.D. Pa. 2006).

Nevertheless, the majority of federal circuit courts of appeals have concluded that these so-called "hybrid" actions are not inherently incompatible.  *See Knepper v. Rite Aid Corp.*, 675 F.3d 249, 261–62 (3d Cir. 2012) ("[W]e disagree with the conclusion that jurisdiction over an opt-out class action based on state-law claims that parallel the

FLSA is inherently incompatible with the FLSA's opt-in procedure"); *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 981 (7th Cir. 2011) (reversing a district court's finding that the opt-in and opt-out conflict precluded Rule 23 certification, as "[t]here is ample evidence that a combined action is consistent with the regime Congress has established in the FLSA" and noting that, with respect to supplemental jurisdiction over state wage law claims, "it is sensible to litigate all theories in a single federal proceeding"); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247–49 (2d Cir. 2011) (internal citation omitted) ("[W]e agree with the Seventh Circuit that . . . the ''conflict' between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23 is not a proper reason to decline jurisdiction.'"); *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416 (D.C. Cir. 2006) (holding that the district court erred in relying on a conflict between the opt-in and opt-out provisions to decline to exercise supplemental jurisdiction over the plaintiff's state law wage claims, and noting that on remand, although the district court remains free to consider declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c),[3] it did not believe that the state law claims would "predominate" over the FLSA claims for purposes of 1368(c)(2), as "the state law claims essentially replicate the FLSA claims"); *Wang v. Chinese Daily News*, 623 F.3d 743, 760–61 (9th

---

[3] 28 U.S.C. § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction over a claim if

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Cir. 2010), vacated on other grounds, 132 S.Ct. 74 (2011) ("We follow *Lindsay* in concluding that it was within the district court's discretion to exercise supplemental jurisdiction over the [state law] claim in this case.").

Unfortunately, the Tenth Circuit has not weighed in on this issue yet. However, many recent cases arising in this District tend toward approving such "hybrid" arrangements. *See Bass v. PJCOMN Acquisition Corp.*, No. 09-CV-01614-REB-MEH, 2011 WL 2149602, at *5 (D. Colo. June 1, 2011); *Lozoya v. AllPhase Landscape Constr., Inc.*, No: 12–cv–1048–JLK, 2015 WL 1524639, *1 (D. Colo. Mar. 31, 2015), *but see In re American Family Mut. Ins. Co. Overtime Pay Litigation*, 638 F. Supp. 2d 1290, 1298–1302 (D. Colo. 2009). The Court agrees with these decisions, and the majority of the federal circuit courts of appeals, that such "hybrid" actions are permissible, so long as they meet the prerequisites for Rule 23.

### B. The Rule 23 Class Certification Standard

A Rule 23 class may be certified only if all four of the following requirements are met:

(1) **Numerosity**: "the class is so numerous that joinder of all members is impracticable";

(2) **Commonality**: "there are questions of law or fact that are common to the class";

(3) **Typicality**: "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and

(4) **Adequacy of representation**: "the representative parties will fairly and adequately represent the interests of the class."

Fed. R. Civ. P. 23(a). A party seeking class certification has a "strict burden of proof,"

and must also show that the case falls into one of the three categories set forth in Rule 23(b).  *Trevizo v. Adams*, 455 F.3d 1155, 1161-62 (10th Cir. 2006); *Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004).  In this case, Plaintiff moves for class certification under Rule 23(b)(3), which requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### C.  Application: The Proposed National Class

The Court begins its discussion regarding Plaintiff's proposed national class, and examines first the most glaring deficiency in Plaintiff's case for class certification under Rule 23 – that is, whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Plaintiff Avendano, who worked for Averus exclusively in the state of Colorado, "concedes that on his own he could not assert claims against Defendants for violations of the employment laws of states in which he did not work."  (Doc. # 69 at 19.)  In particular, Mr. Avendano could not assert claims against Defendants for violations of those other state wage laws because he has not been injured under those laws.  Additionally, there are no named plaintiffs in this case who worked at Averus' other state branches, nor did Plaintiff submit evidence of any kind – other than evidence of the existence of unnamed Drivers and Helpers at other Averus branches and common policies among the other Averus branches – that other Averus employees were injured under the state wage laws

of Illinois, Indiana, Missouri, Minnesota, or Wisconsin.  (*See generally* Doc. # 69 at 19–23.)

Nevertheless, Plaintiff argues that the Court should certify a national class in this case by pointing to district court case law from outside of the Tenth Circuit indicating that the issue of standing can be deferred until **after** class certification.  (Doc. # 69 at 20-21.)  Plaintiff also notes that, "[a]fter all, if the class includes at least one member who has a claim under each of the state laws asserted by the class, a 'case or controversy [will] . . . be assured'" from the moment the class is certified" (*id.* at 21), and argues that the "most important" reason for the court to certify the class is because

> The members of the proposed class are low-wage, mainly immigrant workers who likely do not have much experience with the American legal system and may fear that their employer will retaliate against them for participating as a named plaintiff in this dispute.  These employees may be deterred from serving as named Plaintiffs, but they can effectively and efficiently achieve redress as absent class members through the claims processing and distribution process.  In cases like this, then, the requirement that there be a class representative who can individually assert each state claim raised by the putative class is particularly inefficient and harsh.

(Doc. # 59 at 23.)

The Court fully recognizes that many low-wage, mainly immigrant workers face real risks in pursuing their rights under wage-and-hour laws, and that from this perspective, an "opt out" action certified under Rule 23 could offer redress to those Averus employees who do not, for whatever reason, decide to "opt in" to the national

FLSA action.[4]   Nevertheless, the Court is bound by Tenth Circuit precedent, and in

*Rector v. City & County of Denver*, 348 F.3d 935 (10th Cir. 2003), the Tenth Circuit

remanded a Rule 23 class for decertification, noting that "[a] prerequisite for certification

is that the **class representatives be a part of the class** and **possess the same**

---

[4] Andrew C. Brunsden describes some of these risks:

> Fundamentally, the reason for low opt-in rates is inaction.  Individuals tend to do nothing in response to class notices.  On the one hand, mere inadvertence can explain inaction, as people fail to opt into a lawsuit by treating a class notice as junk mail.  Alternatively, class notices may not reach their intended recipients due to a number of contingencies; for example, a class member may change her address or have a common name.  This problem may be especially acute among low-wage workers, who often experience high job turnover, frequent relocations, and generally reside in impoverished areas. . . .

> [Additionally,] [w]orkers do not pursue rights claims in a vacuum; there are risks to participating in rights enforcement because one must decide whether to challenge employer practices from within the employment relationship.  Due to the presumption of at-will employment, employers have substantial discretion to fire workers who do not have contracts.  The decline in union membership that once served as a counterweight to employers' broad discretion has further weakened workers' bargaining power and has left many workers on their own to handle complaints against employer practices.  Workers are thus confronted with a reasonable fear that exercising their rights may subject them to employer retaliation, notwithstanding statutory prohibitions against retaliation for rights enforcement.  Termination, loss of benefits, or other employer reprisals raise the costs of participation in legal action, especially when those consequences threaten a worker's livelihood and family security.  The fear that by taking action one may lose their job, suffer other adverse treatment, or hurt their reputation in the workplace, is a powerful incentive for inertia.

> Poverty and immigration status compound the barriers to participation.  Low-wage workers not only fear reprisal for taking action, but also face the challenge of obtaining legal representation. Even if low-wage employees are brave enough to opt into a collective action, lawyers are less likely to seek back-pay for workers who were receiving very low wages to begin with.  Undocumented workers fear that participation in wage law enforcement will reveal their immigration status and lead to deportation.  Language and educational barriers further limit the ability of members of these groups to understand class notices, access the legal system, and participate in enforcement.

Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 296–97 (2008).

interest and suffer the same injury as class members," and specifically holding that "**[b]y definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23**." *Id.* at 949–50 (emphasis added) (citing *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287 (11th Cir. 2001) (emphasis added) ("**It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class**. . . . [J]ust as a plaintiff cannot pursue an individual claim unless he proves standing, **a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent**."))  In *Rector*, the Tenth Circuit also cited with approval to *Prado–Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000), in which the Eleventh Circuit held:

> It is not enough [under Rule 23] that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert.  Rather, "**each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim**."

*Id.* at 1280 (emphasis added) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir.1987)); *see also Lewis v. Casey*, 518 U.S. 343, 357, 358 n. 6 (1996) (internal quotation omitted) (emphasis added) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, **not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent**,'" because "standing is not dispensed in gross.")  A

leading class action treatise has explained the interaction between standing and Rule

23's other requirements as follows:

> The doctrine of standing insists on a relationship between a plaintiff's individual harm and the scope of the claims that she seeks to litigate.  This relationship is complicated in a class action because a named plaintiff seeks to litigate the claims of others, as well as her own claims, and because the requirements of Rule 23(a) – commonality, typicality, and adequacy – exist to test the relationship between the named plaintiff's claims and those of the class. . . . Because individual standing requirements constitute a threshold inquiry, the proper procedure when the class plaintiff lacks individual standing is to dismiss the complaint, not to deny class certification.  The class issues are not reached in this instance.  On the other hand, **when a class plaintiff shows individual standing, the court should proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff may serve in a representative capacity on behalf of the class.**
>
> Concrete examples help make these abstract concepts more accessible.  . . . **If, for example, the Topeka, Kansas, school board discriminates against Linda Brown by assigning her to a racially segregated school, then she may pursue a race discrimination claim against the Topeka school board; however, that injury does not give her standing to challenge racial segregation in public schools in, say, Little Rock, Arkansas, nor does it entitle her to pursue race-based housing discrimination claims against the Topeka Housing Authority if she does not live in its housing.**  There cannot be a disjuncture between the harm that the plaintiff suffered and the relief that she seeks.  **Put simply, the scope of the harm defines the contours of a plaintiff's standing and hence of her claims.**

William Rubenstein & Alba Conte, *Newberg on Class Actions* (Newberg) § 2:6

(5th ed.) (emphasis added).

Because "[t]he scope of the harm defines the contours of a plaintiff's standing

and hence of [his] claims," and because Plaintiff Avendano alleges only that he was

harmed by Averus under **Colorado's** wage-and-hour law – **not** under the laws of the

states of Indiana, Missouri, Minnesota, Illinois, or Wisconsin – his injury, and thus his

claims, are not, by definition, "typical" of those of his fellow class members, a "prerequisite" for class certification under Rule 23(b)(3).  *See Rector*, 348 F.3d at 949–50.  Accordingly, the Court denies the instant Motion with respect to Plaintiff's proposed "national" class.

### D.  Application: the Proposed Colorado Class

Plaintiff's Motion also requests, in the alternative, that the Court certify a "subclass" under Rule 23(b), defined as "[a]ll people currently or formerly employed by Averus as Service Technicians or Lead Service Technicians in Averus's Kitchen Exhaust Cleaning Division in Colorado."  (Doc. # 69 at 8.)  The Court addresses Rule 23's requirements for this proposed subclass below.

### 1.  Numerosity

Defendants did not specifically dispute that Plaintiffs can meet the numerosity requirement of Rule 23 with respect to the subclass (nor did they dispute numerosity with respect to the proposed national class).  (*See generally* Doc. # 76.)  Additionally, Plaintiff notes that there are over 50 current and former Drivers and Helpers who can assert claims within the FLSA statute of limitations, based out of Averus' Denver Branch alone.  (Doc. # 69 at 9.)  This is sufficient to satisfy the numerosity requirement of Rule 23(a)(1).  *See* Newberg § 3:12 (5th ed.) ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"); *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 504–505 (D. Kan. 2014) (finding "good faith estimate of at least 50 [class] members" sufficient to satisfy numerosity).

### 2.  Commonality and Typicality[5]

To meet Rule 23(a)(2)'s "commonality" requirement, Mr. Avendano's claims

"must depend upon a common contention" which is "capable of classwide resolution."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  In other words, the

determination of the "common contention" must "resolve an issue that is central to the

validity of each one of the claims in one stroke."  *Id.*  Commonality, however, "requires

only a **single issue** [of law or fact] common to the class."  *J.B. v. Valdez*, 186 F.3d

1280, 1288 (10th Cir. 1999).  Plaintiffs argue that there are three overriding, common

issues of law and fact, because each member of the proposed class was subjected to

the same allegedly illegal pay policies and practices.  These common questions include

(1) whether the policy of refusing to pay Drivers and Helpers for  the entire time spent

waiting to perform a job violates Colorado law, (2) whether the policy of refusing to pay

Drivers and Helpers for their entire time commuting from home to work, except to the

extent that this commute exceeds one hour, violates Colorado law, and (3) whether

Averus' policy – whether official or unofficial – of consistently refusing to compensate

employees for overtime and for all of the hours they work violates Colorado law.  The

Court agrees that commonality is met here.  *See Bass*, 2011 WL 2149602, at *3 (noting

that "[i]t is not difficult to find common factual and legal questions within a class of

plaintiffs who allegedly held similar positions in the defendants' Colorado stores and . . .

---

[5] "The commonality and typicality requirements tend to merge," but both "serve as guideposts
for determining whether . . . maintenance of a class action is economical and whether the
named plaintiff's claim and the class claims are [sufficiently] interrelated."  *Gen. Tel. Co. of Sw.
v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).  Accordingly, the Court discusses these factors
together.

under circumstances that cause the plaintiffs to be paid wages below the minimum required by the [Colorado Minimum Wage of Workers Act].")

Rule 23(a)(3) requires the claims of a named plaintiff to be "typical" of the claims of the class he seeks to represent.  As long as the claims of named plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.  *Id.*  "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class."  *Bass*, 2011 WL 2149602, at *3.  As a Driver for Averus, Plaintiff Avendano's claims arise from his allegations that he, like all of the members of the proposed class, was not paid for compensable travel and wait times, as well as not paid overtime, under Colorado law. Indeed, Plaintiff's counsel submitted a Declaration from another opt-in class member from Averus' Denver location, Michael Anderson, who makes the same kinds of allegations regarding Averus' failure to pay overtime and its policies regarding the failure to pay particular travel time and waiting time.  (Doc. # 81-1.)  As such, Plaintiff has met his burden to show that his claims are "typical" of those of other former or current Drivers and Helpers working for Averus in Colorado.

### 3.  Fair and Adequate Representation of the Class

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class."  In the Tenth Circuit, fairness and adequacy of representation depends on the resolution of two questions.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  These questions are: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class

members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Id.* at 1187–88 (internal citation omitted).

Additionally, under Rule 23(g), the court must appoint class counsel when a class is certified.  Factors pertinent to the appointment of class counsel are: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g).

Plaintiff contends that there are no conflicts between the named Plaintiff, counsel, or other class members, nor does the record (or Defendants) disclose any such conflicts.  Defendants' sole arguments regarding adequacy and the appointment of class counsel contend that Plaintiff's counsel at Towards Justice has not spent a "sufficient" number of hours (i.e., 70) investigating potential claims, Mr. Hood has only been counsel of record in three collective or class actions, and that Mr. Seligman in insufficiently experienced.  (Doc. # 76 at 14-15.)  The Court is not persuaded; indeed, as Plaintiff notes, not only does Towards Justice specialize in wage-and-hour legal work with low-income workers, it has the resources necessary to litigate this action, and is also "committed to advancing all costs of this litigation."  (Doc. # 69-1 at 1.)  As such, the Court finds both that Plaintiff will fairly and adequately represent the class under Rule 23(a)(4), and that Towards Justice should be appointed as class counsel under Rule 23(g).

### 4. Rule 23(b)(3)'s Requirements

Plaintiff seeks class certification under Rule 23(b)(3), which permits class

certification if "the court finds that the questions of law or fact common to the members

of the class predominate over any questions affecting only individual members, and that

a class action is superior to other available methods for the fair and efficient

adjudication of the controversy."  Where common questions "predominate," a class

action can achieve economies of time, effort, and expense as compared to separate

lawsuits, permit the adjudication of disputes that cannot be economically litigated

individually, and avoid inconsistent outcomes.  Fed. R. Civ. P. 23(b)(3), advisory

committee's note (1966).  In making this determination, the Court is instructed to

examine "(A) the interest of members of the class in individually controlling the

prosecution or defense of separate actions; (B) the extent and nature of any litigation

concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the

particular forum; [and] (D) the difficulties likely to be encountered in the management of

a class action."  Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiff Avendano alleges that Defendants have acted on grounds generally

applicable to the members of the class, such that, if liability is shown, relief on a class-

wide basis will be appropriate.  Likewise, for the same reasons discussed with respect

to commonality and typicality, the questions of law or fact common to the members of

this class predominate over individual issues.  Additionally, nothing in the record

indicates that members of the class hold a significant interest in controlling individually

separate actions on their state law claims, nor is there indication that other wage-and-hour litigation has been commenced by any other Averus employees.  With respect to the question of judicial efficiency for the parties and for the court, a class action in this case would be superior to individual suits; additionally, the record does not indicate that management of this case as a class action will present difficulties so significant that class certification on the Colorado state-law claims should be denied.  *See Bass*, 2011 WL 2149602, at *6 ("Logistically, management of a case with two groups of plaintiffs presents some challenges, but those challenges are far from insurmountable.  The members of the FLSA group is easily determined because each individual plaintiff must opt-in.  The members of the Rule 23 class can be determined just as the members of such a class are determined in any class action.  Ultimately, if either plaintiff group is entitled to any relief, the scope of each group and the standards applicable to each group will be readily determinable.  Notably, the prospect of an award from a state court under the [Colorado Minimum Wage for Workers Act] and a separate award from a federal court under the FLSA presents the possibility of conflicting judgments or double recovery for some plaintiffs.  Those risks are obviated by resolving both claims in one case"); *Brickey v. Dolencorp, Inc.*, 244 F.R.D. 176, 179 (W.D.N.Y. 2007) ("[T]he complexities of Rule 23 and FLSA hybrid actions are a challenge that the federal judiciary, and properly instructed juries, are generally well-equipped to meet.").  Accordingly, the Court concludes that Plaintiff has shown that he meets the requirements of Fed. R. Civ. P. 23(b)(3) with respect to the Colorado class.

### III.  **CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion in part (Doc. # 69) and certifies the class of Colorado employees under Rule 23 of the Federal Rules of Civil Procedure.  The Motion is DENIED as to the remainder.  It is further

ORDERED that the Court hereby appoints Plaintiff Alfonso Avendano as class representative for this class, and appoints Alexander Hood and David Seligman, at Towards Justice, as class counsel.  It is further

ORDERED the parties shall meet and confer and submit, within fourteen days of this order, a joint proposed Rule 23 Notice as to the Colorado class.  If the parties cannot agree on joint language, the parties are ordered to submit, simultaneously and within fourteen days of the date of this order, their respective proposed notice with a brief explaining the scope of their disagreement and the legal support for their respective language.  Needless to say, the parties are encouraged to reach an agreement without the Court's intervention.

DATED: September 29, 2016

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge